**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| MONICA LOSOTA, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 18-696 |
| | : | |
| CHILD GUIDANCE RESOURCE CENTERS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                         **JULY 27, 2018**

        Plaintiff Monica Losota ("Ms. Losota") filed suit against Defendant Child Guidance Resource Centers, Inc. ("CGRC") on February 16, 2018, in this Court. (Doc. No. 1.) In her Amended Complaint, filed May 2, 2018, Ms. Losota brings four causes of action against CGRC. (Doc. No. 5.) In Count I, Ms. Losota claims violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* (Am. Compl. ¶¶ 27–37.) In Count II, she alleges violations of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955. (*Id.* ¶¶ 38–48.) In Counts III and IV, she claims violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* for failure to reinstate and retaliation, respectively. (*Id.* ¶¶ 49–62.)

        Presently before this Court is CGRC's "Motion to Dismiss Counts III and IV of First Amended Complaint and Motion to Strike Punitive Damages Claim in Count II of Plaintiff's First Amended Complaint" (Doc. No. 7), Ms. Losota's Brief in Support of her Opposition to Defendant's Motion to Dismiss (Doc. No. 8), and CGRC's Reply Brief in Support of its Motion

to Dismiss (Doc. No. 10). For the reasons noted below, CGRC's Motion is granted in part and denied in part.

I. BACKGROUND[1]

Ms. Losota was hired in September 2013 as a mental health professional in CGRC's "Family First" department. (Am. Compl. ¶ 9.) On August 7, 2016, Ms. Losota experienced double vision and was admitted to Jefferson Hospital. (*Id.* ¶ 10.) Following her discharge, she was referred to Dr. Robert Sergott, a neuro-ophthalmologist. (*Id.* ¶ 11.) Dr. Sergott diagnosed Ms. Losota with multiple sclerosis on September 2, 2016. (*Id.* ¶ 12.) Shortly thereafter, Ms. Losota was informed by CGRC's Staff Development Coordinator that she was approved for FMLA leave beginning on August 8, 2016, with a return to work date of November 1, 2016, so that she could complete a recovery program designed to stabilize her condition to the point that she could return to work. (*Id.* ¶ 13–14.) However, during a follow-up appointment on October 14, 2016, Dr. Sergott informed Ms. Losota that her condition had not improved quickly enough to meet her return to work date. (*Id.* ¶ 15.) Dr. Sergott estimated she would not be cleared to work until January 16, 2017. (*Id.* ¶ 16.)

Shortly after her appointment with Dr. Sergott, Ms. Losota had a meeting with CGRC's Human Resources Representative, Marsha Ejiofo ("Ms. Ejiofo"), and Division Director, Michael Graziano ("Mr. Graziano"), to inform them that she would not be able to return to work on November 1, 2016, and that she would require additional leave. (*Id.* ¶ 17.) Mr. Graziano told Ms. Losota to prepare a letter requesting additional leave, but that she should "not worry about it" and focus on recovering her health. (*Id.* ¶ 18.) Following these instructions, Ms. Losota sent a letter, dated October 25, 2016, requesting that her leave be extended through January 13, 2017.

---

[1] We take the facts alleged in the Amended Complaint as true, as we must when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation omitted).

(*Id.* ¶ 19.) On October 26, 2016, Ms. Losota received a letter in response stating that she would not be granted an extension and that her employment would be terminated on November 1, 2016, "at the end of [her] FMLA [leave]."[2] (Def.'s Mem. Law in Supp., Ex. B.)

Ms. Losota was ultimately cleared to return to work at full capacity on January 16, 2017. (*Id.* ¶ 21.) However, according to Ms. Losota, CGRC refused to engage in a meaningful back and forth towards the "development of an accommodation" for her multiple sclerosis condition, as required under the ADA. (*Id.* ¶ 22.) Ms. Losota claims that as a direct result of her diagnosis, CGRC terminated her employment. (*Id.* ¶ 24.) She also avers that at all material times, CGRC was hostile to her disability and her need to utilize FMLA leave. (*Id.* ¶ 25.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154

---

[2] In her Amended Complaint, Ms. Losota is vague about the date of her termination, however in her briefing in opposition to the instant Motion, she alleges that she was terminated "prior to the expiration of her leave." (*Compare* Am. Compl. ¶ 20 *with* Pl.'s Br. in Opp'n Def.'s Mot. to Dismiss 9.) CGRC's Motion to Dismiss includes copies of Ms. Losota's October 25, 2016 letter and CGRC's October 26, 2016 response. (Doc. No. 7, Exs. A and B.) Because Ms. Losota relies on these letters in her Amended Complaint and does not raise any issues of authenticity concerning the attached letters, we find that they are authentic documents. (Am. Compl. ¶¶ 19–20.) Therefore, we may consider these letters during our review of the instant Motion. *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (allowing consideration of undisputedly authentic documents upon which the complainant's claims are based). Accordingly, we find it readily apparent that Ms. Losota was terminated upon the conclusion of her FMLA leave on November 1, 2016. (Def.'s Mem. Law in Supp., Ex. B ("[W]e have decided instead to terminate your position *effective at the end of your FMLA*.") (emphasis added).)

n.1 (3d Cir. 2014)). However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678–79). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

## III. DISCUSSION

CGRC seeks to strike Ms. Losota's demand for punitive damages under the PHRA. (Def.'s Mem. Law in Supp. 1.) Ms. Losota concedes that the PHRA does not provide punitive damages as a remedy and withdraws this demand. (Pl.'s Br. in Opp'n Def.'s Mot. to Dismiss 1, 9.)[3] CGRC also seeks dismissal of Ms. Losota's claims of failure to reinstate and retaliation under the FMLA. (Def.'s Mem. Law in Supp. 1.) We will first address Ms. Losota's claim for failure to reinstate under the FMLA and then her FMLA retaliation claim.

### A. CGRC Did Not Fail to Reinstate Ms. Losota as Required by the FMLA

The FMLA provides eligible employees with the right to take up to twelve weeks of unpaid leave, as well as protection from discrimination for exercising that right. *See Panto v. Palmer Dialysis Ctr./Total Renal Care*, No. 01-6013, 2003 WL 1818990, at *6 (E.D. Pa. Apr. 7, 2003) (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). Under the FMLA, an employee may take twelve weeks of leave once over a period of twelve months for specific reasons, including "when the employee has 'a serious health condition that makes [him

---

[3] Since Ms. Losota's Brief in Support of her Opposition to Defendant's Motion to Dismiss does not provide page numbers, our internal references to it are based on the Case Management/Electronic Case Filing system pagination.

or her] unable to perform the functions of [his or her] position.'" *Hodgens*, 144 F.3d at 159 (alterations in original) (quoting 29 U.S.C. § 2612). "Upon returning from this statutory leave, an employee is entitled to . . . the same, or equivalent position as the one . . . held before taking the leave. An employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise' any rights that the FMLA guarantees." *Frederick v. Brandywine Hosp., Inc.*, No. 03-3362, 2003 WL 21961372, at *1 (E.D. Pa. July 7, 2003) (internal citation omitted) (quoting 29 U.S.C. §§ 2612, 2615).

Employers may offer their employees more generous leave policies; however, any policy beyond the statutorily required twelve week period is not protected by the FMLA. *See* 29 C.F.R. § 825.700 ("An employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA."); *see also Panto*, 2003 WL 1818990, at *6 ("Defendant's policy provides a more generous benefit, but it does not convert this leave to an entitlement under the FMLA.").

Here, Ms. Losota claims that she was not reinstated to her position when she was deemed ready to return to work by her doctor on January 16, 2017. (Am. Compl. ¶ 20.) However, Ms. Losota admits that she received her full, statutorily-protected twelve weeks of FMLA leave, beginning August 8, 2016, through November 1, 2016. (Pl.'s Br. in Opp'n Def.'s Mot. to Dismiss 2.) Further, Ms. Losota admits that she could not have been reinstated after her leave expired because she had not yet been cleared to return to work by her doctor. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 384 (3d Cir. 2002) ("[Plaintiff must] establish not only that he was not returned to an equivalent position but also that he was able to perform the essential functions of that position."); *see also Baker v. Hunter Douglas, Inc.*, 270 F. App'x 159, 162 (3d Cir. 2008) (finding plaintiff could not prove she could return to work because she never received

5

certification from her doctor); *Hatchett v. Philander Smith College*, 251 F.3d 670, 676–77 (8th Cir. 2001) (finding reasonable accommodations are inapplicable in the context of FMLA claim); 29 C.F.R. §§ 825.214(b), 825.216(c) (2013) ("If the employee is unable to perform an essential function of the position because of . . . the continuation of a serious health condition . . . , the employee has no right to restoration to another position under the FMLA.").

The fact that Ms. Losota was terminated from her position after she exhausted her FMLA leave and was not granted an extension by CGRC is not a basis for a claim of FMLA interference. *See Panto*, 2003 WL 1818990, at *6 ("Because [plaintiff] was not eligible for FMLA leave at the time her employment was terminated, she cannot establish an interference claim under the FMLA."). Therefore, Ms. Losota has not pleaded a claim for failure to reinstate under the FMLA, and CGRC's Motion to Dismiss is granted as to Count III of the Amended Complaint. Accordingly, Count III is dismissed with prejudice.[4]

**B.     Ms. Losota Has Successfully Pleaded Her Prima Facie Case for FMLA Retaliation.**

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). Courts consider FMLA retaliation claims as if they are employment discrimination claims. *Id.* at 302. Claims brought on the basis of circumstantial evidence are assessed under the *McDonnell Douglas* burden-shifting

---

[4] Ms. Losota's claim for failure to reinstate under the FMLA is inherently deficient and cannot survive a motion to dismiss. In this instance, any amendment to this claim would be futile because Ms. Losota admits that she received her full FMLA leave and that she was unable to return to work at the conclusion of her FMLA leave. While the United States Court of Appeals for the Third Circuit has held that "leave [to amend] shall be freely given when justice so requires," it acknowledges that district courts have the discretion to grant or deny such an amendment, provided there is proper justification. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434–35 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (3d Cir. 1996)) (citing *Forman v. Davis*, 317 U.S. 178, 182 (1962)) (finding proper justifications to deny leave to amend include: undue delay; bad faith; dilatory motive; prejudice; and futility).

framework, while claims based on direct evidence are evaluated under the mixed-motive framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77 (1989) (O'Connor, J., concurring)).

Presently, all of Ms. Losota's assertions to support her FMLA retaliation claim are purely circumstantial. (Pl.'s Br. in Opp'n Def.'s Mot. to Dismiss 7.) Applying the *McDonnell Douglas* standard, Ms. Losota clearly pleads the first prong of her prima facie case: that she invoked her rights under the FMLA. (Am. Compl. ¶¶ 10–14.) She also adequately pleads that she suffered an adverse employment action. *See Fleck v. WILMAC Corp.*, No. 10-05562, 2011 WL 1899156 (E.D. Pa. May 19, 2011) (finding plaintiff's "termination could still constitute an adverse action under the FMLA even if she was not entitled to reinstatement under the FMLA"). Finally, Ms. Losota sufficiently pleads a causal connection between her termination and her invocation of FMLA leave.

"The requisite causal connection can be established by (1) the temporal proximity between the protected activity and the adverse employment action, (2) circumstantial evidence of a 'pattern of antagonism' following the protected conduct, or (3) where the proffered evidence, looked at as a whole, suffices to raise the inference." *Cortazzo v. City of Reading*, No. 14-2513, 2016 WL 1022267 (E.D. Pa. Mar. 15, 2016). Ms. Losota pleads no pattern of antagonism as the only interaction found in the Amended Complaint details a supportive conversation with supervisors. (Am. Compl. ¶¶ 17–18.) However, due to the timing of Ms. Losota's termination, immediately after the expiration of her FMLA leave period, we must find that she has established an "unduly suggestive" temporal proximity in order to defeat CGRC's Motion to Dismiss. *See Lichtenstein*, 691 F.3d at 307 (quoting *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)) ("When the 'temporal proximity' between the protected activity and

7

adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality . . . .'")

The letter CGRC sent to Ms. Losota on October 26, 2016 clearly indicates that the decision to terminate Ms. Losota was made during her FMLA leave, even though the termination was not effective until after the twelve week period had ended. (Def.'s Mem. Law in Supp., Ex. B.) The United States Court of Appeals for the Third Circuit ("Third Circuit") is "reluctant to infer a causal connection based on temporal proximity alone," but the "decision to replace [plaintiff] before her FMLA leave ended" can be sufficient to show the requisite inference of a causative link. *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (finding that decision to terminate made during employee's FMLA leave period, even though not effective until after, can establish unusually suggestive timing for FMLA retaliation claim); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) ("proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection."); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding two days between protected activity and discharge to be sufficient evidence of causal connection); *Johnson v. Del. Cty. Cmty. College*, No. 15-01310, 2015 WL 8316624, at *11 (E.D. Pa. Dec. 9, 2015) (finding that decision to terminate made during employee's FMLA leave period sufficient to establish unusually suggestive timing for FMLA retaliation claim).

Thus, based on the facts as pleaded in her Amended Complaint, Ms. Losota has successfully met the minimal pleading standard for a claim of FMLA retaliation. *See Clark v. Phila. Housing Auth.*, 701 F. App'x 113, 116 (3d Cir. 2017) (stating pleading standard must at least "suggest that discovery will reveal evidence of every necessary element of the claim.")

Therefore, Ms. Losota may proceed with her claim of FMLA retaliation and CGRC's Motion to Dismiss is denied as to Count IV of the Amended Complaint.

## IV. CONCLUSION

For the reasons noted above, CGRC's "Motion to Dismiss Counts III of First Amended Complaint and Motion to Strike Punitive Damages Claim in Count II of Plaintiff's First Amended Complaint" is granted as it relates to Count III and the punitive damages claim in Count II and is denied as it relates to Count IV.

An appropriate Order follows.